# DECISIONS IN CASES NOT REPORTED.

Elizabeth Blazy, Respondent, v. Hector McLean, Appellant.— Judgment appealed from affirmed, with costs.—

Lewis, Haight and Bradley, JJ., concurred.

Frank H. Lovell, Respondent, v. George W. Jacobs, Appellant.— Judgment appealed from affirmed, with costs.

Allegany Lumber Company (Limited), Appellant, v. William Hoyt and Another, as Surviving Partners, etc., Respondents.— Judgment appealed from affirmed.— The action was brought for an alleged breach of contract made between the parties, of date May 15, 1884, by which the defendants agreed to sell to the plaintiff all the hemlock timber, after it had been cut and the bark peeled from it, on certain described lands in McKean and Bradford counties, State of Pennsylvania, at a certain price per specified quantity, also the cherry, ash, oak, cucumber, basswood, whitewood, pine and black birch upon the lands at another price specified.  It was stated in the contract that the defendants intended to construct a railroad from the terminus of the New York, Lake Erie and Western railroad in the city of Bradford, up the west branch of the Tunangwant creek, and up Fuller brook to the east line of warrant No. 3422, to be furnished with an engine, the railroad to be and remain under the management and control of the defendants, subject to the terms of their contract with the New York, Lake Erie and Western Railroad Company of date May 9, 1884, and that the parties and Benjamin F. Hazelton should have the right and privilege of using the railroad and engine for the purpose of moving bark, logs and lumber, they respectively to furnish their own rolling stock other than the engine; that the cost and expense of operating and maintaining the railroad after its completion be borne by the plaintiff, defendants and Hazelton *pro rata*, in proportion to the number of car loads shipped over it by each; and that the plaintiff should have equal rights and facilities with the defendants

"in loading its cars, and in moving all logs and timber." The railroad was afterwards constructed and completed in August, 1884, and the contract remained operative between the parties to it until in January, 1888. The plaintiff charges that the defendants failed to pay their *pro rata* share of the expense of maintaining and operating the railroad, and denied to the plaintiff the facilities to which it was entitled for removal and transportation of its logs and lumber; and as the consequence the plaintiff sustained large amount of damages. The allegations in support of a cause of action were put in issue by the answer of the defendants; and they alleged a counterclaim against the plaintiff for moneys due them on the contract. The referee found that there remained unpaid from the plaintiff to the defendants of the purchase price of the timber sold to it, the sum of $4,265.91, which became due June 1, 1889; that the defendants had failed and neglected to afford the plaintiff equal rights and facilities with them in loading its cars and in moving logs and timber over the railroad, to the plaintiff's damage of $2,000, and directed judgment against the plaintiff for $2,368.36.—

BRADLEY, J.: The defendants had a large tract of hemlock timber land in the counties of McKean and Bradford, in the State of Pennsylvania. They desired to use the bark in their tannery at Limestone, in the county of Cattaraugus, N. Y., and the plaintiff wanted the timber to manufacture into lumber for market. The timber was on the uplands some miles from the city of Bradford in the county of McKean. And it was quite necessary to enable the parties to get the timber, lumber and bark to their places of destination and market, to construct a railroad leading from such lands to intersect that of the New York, Lake Erie and Western Railroad Company at the city of Bradford, which was the most feasible means to accomplish the purpose in view. The parties having a common interest, joined in its maintenance in the manner provided in the contract. The New York, Lake Erie and Western Railroad Company contributed to the construction of the road, pursuant to a contract of date May 9, 1884, between it and the defendants, by which that company agreed to furnish the iron rails, the defendants to maintain it, the railroad company to furnish the defendants with empty cars at Bradford as required for their business, and the railroad to be used jointly by them and the company. It had a right of way on the route mentioned in the contract, up the west branch of the Tunangwant creek on which a roadbed had been constructed and a tramway laid, and then in use by Benjamin F. Hazelton, who thereupon, in view of the advantages to accrue to him from the contemplated road, surrendered the roadbed to the railroad company. On May 15, 1884, Hazelton entered into contract of that date with the defendants, by which they sold to him all the hemlock timber after the bark had been peeled from it, on certain lands in the county of McKean, Hazelton to cut the timber, peel the bark and load it upon the cars for the defendants, who also sold to him other timber on the same tract, and they in the contract expressed their intention to construct a railroad up the west branch of such creek for the distance of eight miles, and to furnish an engine, they also to furnish cars for removing the bark, Hazelton to have the right to use the railroad and engine to remove his logs, timber and lumber, but to furnish his own rolling stock other than the engine for that purpose, and Hazelton to have equal rights and facilities with the defendants and the plaintiff in moving his logs, timber and lumber over the railroad, and in the use of the engine. It thus appears that all these

parties had an interest in common in the purpose for which the railroad was intended. The railroad was completed, and with a view to its operation the plaintiff, defendants and Hazelton entered into an agreement of date August 23, 1884, whereby it was mutually agreed that Hazelton "should have absolute charge of operating said West Branch railroad under the direction of the New York, Lackawanna and Western Railroad Company." The parties assumed to proceed upon the basis represented by the contracts before mentioned. The plaintiff charges that their provisions were not observed, in that it was not permitted to have equal rights and facilities with the defendants, in the means of the removal of its logs, timber and lumber upon the railroad. This complaint has relation to the use of the engine and supply of cars. Upon that subject there was much evidence which was not entirely in harmony. The plaintiff had a mill located on what was known as the Fuller branch of the railroad, where a large quantity of lumber was manufactured from logs taken there on the cars, and later, cars were employed in removing the lumber from the mill. There is evidence tending to prove that the engine was almost constantly employed in taking empty cars to places where desired to load upon them bark for the defendants, logs and lumber for the plaintiff and Hazelton, the bark and lumber taken to Bradford for transportation elsewhere, and the logs to the mills to be cut into lumber; that there were times when cars were not required or desired by the plaintiff, or those in charge of its mill there at Fuller branch. It may be observed that neither of the parties undertook to furnish cars for any other of them. Hazelton had his own log cars; the plaintiff and defendants were dependent upon the railroad company for cars for their use; while the defendants wanted them for their bark, the plaintiff required them for its logs and lumber. Those supplied by the railroad company to the defendants upon their order were not available to the plaintiff in some instances, because the railroad company would not consent to their use by it. And Hazelton did not permit the use of single brake cars to haul out the plaintiff's lumber, because he did not deem it safe to do so on a grade of 350 feet to the mile. His views in that respect had some evidence in its support tending to justify it. While it was contemplated that the parties should have equal facilities for the removal of their bark, logs and lumber, there was nothing which they had in common for the purpose, except the railroad and the engine. It may be assumed that their opportunities for ordering cars from the railroad company were equal, and if any exclusion of the plaintiff from the use of the engine was unduly caused by the defendants' appropriation of it to their use to the prejudice of the plaintiff, they were chargeable for the consequences. It must be assumed that the defendants for that cause were liable to the plaintiff to the extent and for the amount found by the referee. This upon the evidence was a question of fact for him to determine; and it is difficult to see in the evidence that he was required by it to find a liability for a larger amount, even if it be assumed that there was some, which would have permitted him to do so. The magnitude of the business in bark, logs and lumber, in which the parties were engaged and which they transacted there was large; and for that purpose during the period from about the 1st of September, 1884, to early in January, 1888, the number of carloads handled for them as per account rendered, was about 11,900, of which the plaintiff had 5,377, the defendants 2,946, and Hazelton the residue. The latter testified that he never failed to supply cars to

the plaintiff when there were any to supply it with. The disputed questions of fact upon the subject of distribution of cars and of inequality of facilities, in view of the circumstances which the evidence tends to prove existed, must be deemed disposed of by the findings of the referee. The fact that the plaintiff had a large quantity of lumber remaining piled in the woods at the close of the year 1887 does not necessarily require the conclusion that it had been denied the facilities to which it was entitled. The question is raised as to the right of the plaintiff to place within the operation of the contract, in respect to facilities, the timber upon the lands purchased by Mr. Bullis (who was the president of the plaintiff) of Healy & Son, about three months prior to the time the defendants were relieved from the obligation of their covenants in the contract with the plaintiff. And it is urged that the denial of such rights by the defendants was in violation of that to which the plaintiff was entitled. This view is not supported. The contracts to which the defendants were parties had reference to the lands from which it was contemplated by their provisions the bark and timber would be taken, and to extend the facilities to other land and proportionally to the increase of the plaintiff's lumber business, so occasioned, would evidently take the operation of the contract beyond the purposes in view, and to the unanticipated prejudice of the defendants as well as Hazelton. It is unnecessary to consider the further suggestion whether the plaintiff had such relation to the Healy lands (the legal title to which was in Bullis) as to enable it to assert such right. The contract between the plaintiff and defendants provided that "the cost and expenses of operating and maintaining the railroad should be borne by the defendants, plaintiff and Hazelton pro rata in proportion to the number of carloads shipped over it by each." The plaintiff contends that the account of such cost and expense as rendered was unfair, to its prejudice; and that having from time to time been required to make payments in the proportion as charged, the plaintiff seeks reimbursement of the alleged excess so paid, over the amount with which it was justly chargeable. This claim of overpayment is based mainly upon the grounds: (1) That many of the cars furnished to the plaintiff were of less capacity than those had by the other parties, and no discrimination was made on that account; and (2) that many carloads of logs handled by Hazelton were not included in the statement upon which division of expenses was made. The referee was, upon the evidence, permitted to find that there was no substantial support for the complaint founded upon the first proposition. It appears that the plaintiff shipped substantially no lumber until the year 1886; that prior to that time cars were employed on its part mainly in hauling logs. For that purpose flat cars were necessarily used; the larger or gondola cars could not conveniently be employed for the purpose. They were the kind of cars suitable for the shipment of the defendants' bark. And there is evidence tending to prove that the capacity as indicated by the label on the cars did not necessarily control in regard to the loads placed upon them. As to the charge that carloads of logs taken by Hazelton to his mill were not included in the statements upon which expenses were apportioned, it may be said that his mill was located on the railroad between the place where his logs were skidded and Bradford; that he owned the log cars used by him, and they were by the engine pushed from the mill up to the place where loaded and dropped down to the mill by gravity without aid of the engine, and that the lumber manu-

factured from the logs was put on cars and drawn by the engine to Bradford. The removal of his logs to his mill was not specifically included in the account, but the trips of cars loaded with lumber manufactured from them to Bradford were treated in the statement of the account as those with which he was chargeable as between him and the other parties. The distance from his mill to the place where his logs were skidded was short, from one to three miles, and a few minutes only were occupied in shoving the cars up to them on each occasion. This was done once a day most of the time and sometimes twice a day. In May or June, 1887, Hazelton obtained an engine of his own, which was thereafter used upon his log cars and in switching about his mill. And it further appears that with a view to the payment monthly of the expenses of operating the road, statements were made, and they furnished the means by which the proportions chargeable to the plaintiff, defendants and Hazelton respectively, were obtained and the basis upon which the monthly payments were made. There is evidence tending to prove that in the summer of 1885 the representative of the plaintiff in the business charged that Hazelton was moving cars not included in the monthly statements; thereupon he was invited to and did investigate the matter, and heard the explanation of Hazelton with which he expressed himself as satisfied. The view taken by Hazelton of the manner of making up and presenting his use of the road in the monthly statements made for the purpose of distribution of the burden of its operating expense may not upon the evidence be deemed unreasonable. These facts, which the evidence tended to prove, may properly have had some bearing upon the disposition made by the referee of the plaintiff's alleged claim for denial of facilities to which it was entitled in the business, as well as upon the question whether or not it had paid more than its proportional share of the expenses chargeable to all the parties. Without expressing further reference to the evidence or amplifying reasons upon the subject, we think the referee was reasonably permitted as he did to reach the conclusion that the latter claim of the plaintiff was not supported by the evidence. No consideration is given to the release of the plaintiff to the defendants, of date December 29, 1887, which became operative in January following, as the construction and effect given to it by the referee are deemed conclusive upon this review. In the rulings upon the trial there was no error to the prejudice of the plaintiff. And as viewed here none of the exceptions to the findings as made by the referee or to his refusals to find as requested were well taken. The judgment should be affirmed. All concurred.